1              IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
2                    URBANA DIVISION

3

4   UNITED STATES OF AMERICA        )
                                    )
5                   Plaintiff,      )
                                    )
6           vs.                     )   No. 17-cr-20053
                                    )
7   NEHEMIAH LAFOE,                 )
                                    )
8                   Defendant.      )

9

10

11                  SENTENCING HEARING
          BEFORE THE HONORABLE COLIN S. BRUCE
12                  MAY 14TH, 2018
                       1:30 P.M.
13

14

15

16           BE IT HEREBY CERTIFIED and
    REMEMBERED, that on, to wit:  The 14th day of May,
17  2018, the following proceedings were held in open
    court before the Honorable Colin S. Bruce, Judge of
18  said Court.

19

20

21

                Reported and Transcribed by:
22
          Jill Nicole Stevens, CSR # 084-004212
23       Area Wide Reporting and Video Conferencing
                301 West White Street
24           Champaign, Illinois  61820
                   (800) 747-6789
25

```
1                            INDEX

2   APPEARANCES:

3   For the Plaintiff:
                Elham M. Peirson
4               U.S. Attorney
                201 South Vine
5               Urbana, Illinois  61802
                (217) 373-5875
6               elly.peirson@usdoj.gov

7   For the Defendant:
                Elisabeth R. Pollock
8               Federal Public Defender
                300 West Main Street
9               Urbana, Illinois  61801
                (217) 373-0666
10              elisabeth_pollock@fd.org

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        1:29 p.m.
 2            THE CLERK:  This is in Case Number
 3   17-20053, United States of America versus Nehemiah
 4   LaFoe.
 5            THE COURT:  The United States is
 6   represented by Assistant U.S. Attorney Elly Peirson;
 7   the Defendant is represented by his attorney,
 8   Elisabeth Pollock.  The Defendant is personally
 9   present; he is in custody.  The author of the
10   presentence report, Kara Appenzeller, is also
11   present in the courtroom.  There are some family or
12   friends also present here in the gallery.
13            All right.  Mrs. Peirson, you have
14   received and reviewed the revised presentence
15   report?
16            MS. PEIRSON:  I have, Your Honor.
17            THE COURT:  The presentence report
18   indicates that the Government has no objections.  Is
19   that still correct?
20            MS. PEIRSON:  That's correct, Your Honor.
21            THE COURT:  Do you have any evidence you
22   intend to present in aggravation?
23            MS. PEIRSON:  Your Honor, the victim and
24   her mother are present in court.  They -- the mother
25   wishes to make a victim impact statement.  The
```

1    victim herself is not sure, so I will check with her

2    when appropriate.  They don't have any documents to

3    present.  They just want to stand up and speak to

4    the Court freely.

5              THE COURT:  That's fine.  Okay, we will

6    take that up in a while.  Thank you.  Mrs. Pollock,

7    you have received and reviewed the revised

8    presentence report?

9              MS. POLLOCK:  Yes, Your Honor.

10             THE COURT:  Did you go over it with your

11   client?

12             MS. POLLOCK:  Yes, Your Honor.

13             THE COURT:  And I read the -- I forgot the

14   name of the organization, but I read the very

15   extensive evaluation conclusions that is

16   Document 25.  I forgot the name of the organization.

17             MS. POLLOCK:  She works for us,

18   Your Honor.  She is our mitigation specialist,

19   master's in social work, Kathleen Leifer.  She's in

20   the courtroom.

21             THE COURT:  Oh, I thought she was somebody

22   independent.

23             MS. POLLOCK:  No.

24             THE COURT:  Oh, your office has upped

25   their game.  Wow, good.  Okay.  All right.  And you

1 have the one objection?

2          MS. POLLOCK:  It's an objection,

3 Your Honor; it's preserved for the record as a

4 formal matter.  It really goes to the 3553(a)

5 factors and the severity of the sentence.  So,

6 legally speaking, we recognize that the application

7 of the guidelines is correct.

8          THE COURT:  All right.  So, just -- okay.

9 So, you are just doing it so you can preserve it for

10 appeal, if necessary?

11          MS. POLLOCK:  That's correct, Your Honor.

12          THE COURT:  All right.  Because I read the

13 Carr case and I didn't see anything that -- it's

14 pretty much definitive.

15          MS. POLLOCK:  We agree with that,

16 Your Honor, but for the purposes of preservation and

17 also for argument, we needed to make the objection.

18          THE COURT:  All right.  So, I will then

19 indicate that the Court adopts the Government and

20 the Probation Officer's position and that objection

21 is overruled.  I understand why you're making it and

22 if something changes with the Court of Appeals, they

23 could tell me to revisit that in the future.

24          All right.  Do you have any other evidence

25 you intend to present in mitigation?

1          MS. POLLOCK:  I do not, Your Honor.

2          THE COURT:  Okay.  Mr. LaFoe, have you had

3  a chance to read the revised presentence report?

4          DEFENDANT LAFOE:  Yes, I have, sir.

5          THE COURT:  Did you talk about it with

6  Mrs. Pollock?

7          DEFENDANT LAFOE:  Yes.

8          THE COURT:  Okay.  I just asked her if she

9  had any other objections to the presentence report

10  and she indicated she just had the one that we just

11  now talked about that I just ruled upon.

12          Are there any other objections that you

13  have that, for whatever reason, she is not willing

14  to make on your behalf?

15          DEFENDANT LAFOE:  No, sir.

16          THE COURT:  Okay.  All right.  Based upon

17  that record, the Court at this time adopts the

18  revised presentence report, all of its paragraphs

19  and findings contained therein.

20          This results in an offense level of 43, a

21  criminal history category of one.  The guideline

22  range for Counts 1, 2 and 3 aggregated, it's life.

23  Supervised release for all three counts has a

24  mandatory minimum of five years to life.  The

25  Defendant is not eligible for probation.  There is a

1  fine of $50,000 to $250,000.  Restitution is not

2  applicable.  And each of the three counts has a $100

3  special assessment for a total of $300.  Is that a

4  correct statement of the guidelines?

5         MS. PEIRSON:  It is, Your Honor.

6         THE COURT:  Do you agree?

7         MS. POLLOCK:  I agree, Your Honor.

8         THE COURT:  All right.  Statutorily,

9  Counts 1 and 2 are a mandatory minimum 15 years to

10  30 years.  Count 3 does not have a mandatory

11  minimum, but it's up to 30 years.  Wait a second.

12  Wait.  Yeah, that's correct.  Is that correct?

13         MS. PEIRSON:  That's correct, Your Honor.

14         MS. POLLOCK:  I agree, Your Honor.

15         THE COURT:  All right.  Then, for

16  supervised release, all three have a mandatory

17  minimum of five years to life, just like the

18  guidelines.  The Defendant is not eligible for

19  probation under the statute either.  Each of the

20  counts has a maximum fine of $250,000, so

21  theoretically up to $750,000.  Restitution is not

22  applicable and each of the three counts has a $100

23  special assessment still, so for a total of $300.

24  Is that a correct statement of the statutory

25  guidelines?

1          MS. PEIRSON:  It is, Your Honor.

2          THE COURT:  Do you agree?

3          MS. POLLOCK:  I agree, Your Honor.

4          THE COURT:  All right.  Do you wish to

5   make your recommendation first and then have the

6   statements or statement, or do you wish to --

7          MS. PEIRSON:  I think it would be best to

8   have the victim impact statement first.  I may not

9   have very much to say.  Generally, the victims are a

10  lot more poignant than I am, so --

11         THE COURT:  Okay.

12         MS. PEIRSON:  -- I will let them speak

13  first.

14         THE COURT:  Sure.

15         (Pause.)

16         THE COURT:  Take your time.  Tell me --

17  tell me your name.

18         MRS. SMITH:  My name is Ashley Smith, used

19  to be LaFoe.  I am the victim's mother.

20         THE COURT:  Wait a second, let's get

21  that -- Mrs. Peirson, get the microphone adjusted so

22  we can --

23         MRS. SMITH:  All right.  My name is Ashley

24  Smith, used to be Ashley LaFoe, the victim's mother.

25  I just wanted to come and say how this whole thing

1  impacted our family.

2          First, Nemo I have known since he was six.

3  He is my daughter's uncle.  I entrusted him with all

4  four of my children, not just Azalia, but all of

5  them.  I thought he loved my kids.  I thought he

6  would be a good, you know, good family member.  I am

7  one of those people that don't trust very easily, so

8  for him to do what he did and take away my trust

9  like that was a huge thing.

10          My daughter has been through hell and

11  back, therapy, had to be put into an institution for

12  a while for suicidal thoughts.  I mean, it's been

13  one thing after another.  We had to move because she

14  can no longer feel safe in her own home.  She

15  doesn't trust anybody anymore.

16          I have got three other small children who

17  now had to be uprooted from their own homes and move

18  and no longer trust people either.  I no longer work

19  because I don't trust anybody to leave my kids alone

20  anymore because of this whole situation.

21          I mean, it wasn't something small.  This

22  was something that he did repeatedly for almost a

23  year, and then to act like -- even after he moved

24  out, to act like he cared about her and to find out

25  that that was not true was a humongous deal to me.

1          As I said, I have known him since he was

2    six, so this was more than just a betrayal.  I mean,

3    I looked at him like a little brother for years, and

4    to know that -- I guess to know that he could do

5    something so sickening to his own niece is

6    disturbing and the fact that most of his family knew

7    is even more disturbing.

8          I physically read all of their messages.

9    I don't know if you got to see them, but I

10   physically read every single one and that is

11   something no mother should ever have to see, between

12   the disturbing messages, the pictures, everything.

13         And not only is she his biological niece,

14   but she was a minor and this was at an age where she

15   was supposed to find herself, her sexuality,

16   you know, when most girls are thinking about their

17   first boyfriend or high school prom, and he ruined

18   that.  He has ruined high school for her.

19         I mean, this is something that the trauma

20   itself is going to take years upon years of therapy

21   to help, and then that's hoping that she even gets

22   through this not only mentally but emotionally.  And

23   I don't think he really thought or cared at all as

24   to how this was going to impact her, not for the

25   short time, but for the long impact.  I mean, again,

1   a teenager.

2          She's got a lifetime of relationships that

3   are now ruined from his acts and I just hope that

4   you take that into consideration when you make your

5   choice on how long he should get.  I know you have a

6   certain part that you have to play, but I am just

7   hoping that she gets enough time of therapy and

8   enough time of a normal relationship before he gets

9   out and tries to contact her in any way, shape or

10  form.

11         I need, you know, space and it's really,

12  really hard right now to even be in this courtroom

13  and seriously not strangle him.  I am not even going

14  to lie.  As a mom, I really just want to strangle

15  him right now.

16         THE COURT:  Okay.

17         MRS. SMITH:  And I love my daughter deeply

18  and she is the sweetest kid in the world and didn't

19  deserve any of this whatsoever.  No kid does.  But

20  if you met my daughter, none of this should have

21  happened to her, and especially from somebody that

22  was supposed to be so trusted.  I mean, as I said,

23  for it to be a family member, it was even harder

24  than a complete stranger.  It really is.

25         THE COURT:  Okay.  Thank you.

1          MRS. SMITH:  Thank you.

2          MS. PEIRSON:  If I could just have one

3 moment.

4          THE COURT:  Take your time.

5          MS. PEIRSON:  Your Honor, that's all for

6 the victim impact.

7          THE COURT:  All right.  I will take your

8 recommendation then.

9          MS. PEIRSON:  Your Honor, the guidelines

10 in this case are life.  The statutory maximum on

11 each of the counts is 30 years and when the

12 guidelines are life and in excess of the statutory

13 range, the recommendation to the Court is to give

14 consecutive sentences.  That is the Government's

15 recommendation in this case.

16          It's a lengthy sentence for an individual,

17 as you heard, who betrayed the trust of this family

18 and significantly impacted the life -- the life of

19 this girl and her family for a long time.

20          This is a child who -- I got to know them

21 a little bit as the investigation unfolded.  She was

22 a good student; she did well in school and then this

23 individual took advantage of a girl who what she

24 described to us was him overcoming her will.  He saw

25 it as a consensual relationship, but she could -- in

1  the position that he was in, starting when she was

2  about 11 years old, to groom her and to get her

3  ready for the sexual assault that occurred was

4  overcoming a child who was significantly younger

5  than he was.  And she then -- her grades dropped,

6  her behavior was impacted and she had to struggle

7  through school and, as you heard from her mother,

8  had some mental health issues as a result.

9       I am happy to report that the last time I

10 saw her, she was doing much, much better and more

11 active in school activities and starting to turn her

12 grades around, but that just tells me even more so

13 that the effect of this on her life turned her life

14 upsidedown, but she's a strong girl and she's got

15 good support and so I know that she will survive

16 this and do well in the future, but a lengthy

17 sentence is deserved in this case because she

18 carries this with her for the rest of her life.

19      She struggles with this for the rest of

20 her life and so a life sentence, as recommended by

21 the guidelines, is something that is the mere amount

22 of time that this Defendant deserves because he

23 deserves to have to think about his crime for the

24 rest of his life, just like she will, so -- and I

25 think that it's particularly heinous in this case

1  because it's a family member and because it went on

2  from the time that she was very young and then

3  progressed to the sexual activity, the choices he

4  made, the way that he impacted her, the way that he

5  influenced her.

6         Instead of being a positive role model and

7  encouraging her to do better, he took advantage of

8  the fact that her parents weren't supervising her in

9  the immediate present time.

10        So, that is -- I know that the Court has a

11 lot of discretion there and I also am aware of the

12 other types of sentences this Court has imposed in

13 these types of cases.  I do think the Defendant

14 should get some credit for having accepted

15 responsibility and done so early on and not put this

16 family through a trial.

17        So, I will leave it to the Court's

18 discretion.  I am not going to give the Court a

19 number, unless you really want me to, but I think

20 that a sentence that significantly impacts this

21 person's life will be reflected on the impact it has

22 on the victim.

23        THE COURT:  Thank you, Mrs. Peirson.  Oh,

24 do you have any objections to any proposed terms of

25 supervised release?

```
1            MS. PEIRSON:  No, Your Honor.
2            THE COURT:  Do you wish me to read all
3    those into the record along with the justification
4    or do you waive?
5            MS. PEIRSON:  No, Your Honor, I waive.
6            THE COURT:  Mrs. Pollock.
7            MS. POLLOCK:  Thank you, Your Honor.  I
8    think it's going to come as no surprise that I
9    disagree with the assessment of life in prison for
10   someone who has never committed a crime in their
11   life.
12            I wanted to do the mitigation
13   investigation in this case because this is kind of a
14   rare case.  You don't normally see facts like this
15   and I wanted to find out why this happened, not just
16   that it happened but why it happened, and I think
17   what our investigation revealed is a lot of
18   explanation as to how Mr. LaFoe got into this
19   situation.
20            And, you know, this is not like our
21   normal, you know, 30, 40-year-old gentleman on the
22   internet soliciting minors because they're
23   pedophiles.  It's not because he has an interest --
24   a sexual interest -- in children in the same way
25   that we see with a lot of child pornography cases.
```

1           This guy is barely older than 18, and when

2   he first began this relationship, he was 20, 21.

3   And as the Court saw from his educational records,

4   including his IQ and learning disabilities, which I

5   included in the report, he was mentally probably not

6   even an adult when he engaged in this behavior.

7           THE COURT:  You mean mentally or

8   emotionally?

9           MS. POLLOCK:  Both.

10          THE COURT:  Right.  I mean, as I read the

11  report, it was -- well, he does have mental issues;

12  he had dropped out of school and the IEP; I read all

13  of that, but he also had emotional issues also which

14  kept him -- would you agree he was very immature for

15  his biological age?

16          MS. POLLOCK:  I believe that's correct,

17  Your Honor, and I believe the only way this

18  gentleman is an adult is in terms of years.

19          THE COURT:  Biologically?

20          MS. POLLOCK:  Yes.  So, when you look at

21  how the relationship formed -- and although I know

22  what Ms. Peirson's background is; I know what she

23  normally sees in cases involving grooming -- but

24  there is absolutely no evidence of grooming in this

25  case.

1          He didn't move in with her or establish a

2   relationship with her or buy her gifts or entertain

3   her whimsies in order to establish a trust

4   relationship.

5          What happened here was that Mr. LaFoe had

6   literally never been around a girl even close to his

7   age since he was 12.  His entire existence was

8   within his own family, an extraordinarily unhealthy

9   and abusive family in certain ways, and so when he

10  fell in love with this girl -- which he was -- it

11  was really his only exposure to a romantic

12  relationship that he had ever had.

13         And as the Court will remember, the only

14  reason why we are here right now is because the

15  Vermilion County authorities could not persuade the

16  victim to cooperate in a State case and so they

17  called the FBI and the FBI took over and now we have

18  the electronic sexual exploitation charge.

19         So, you know, as much as the victim needs

20  therapy and needs to recover for what occurred to

21  her -- and we are not arguing in any way, shape or

22  form that she does not -- this relationship was not

23  forced between the two of them.  They believed

24  themselves to be in love and, as the Court can see

25  from the PSR and the conversations had with his

1  sister, he was trying to figure out a way to legally

2  marry her, and so this is not borne of pedophilic

3  impulse; this is not borne of an intent to harm or

4  abuse.  This is a very heavy mitigation case just

5  based on what's happened to Mr. LaFoe.

6            Now, the victim's mother has requested

7  space and time for her family to heal.  Even if the

8  Court were to impose the mandatory minimum sentence,

9  her daughter would be in her 30s when Mr. LaFoe gets

10  out of prison.  He will be in his late 30s or early

11  40s, depending on the sentence imposed by the Court,

12  and that's if it's towards the minimum.

13            He is 23 right now.  If the Court gives

14  him 15 years, that's 38, minus time served, 36 and a

15  half.  So, he will be in his late middle age and she

16  will be in her early middle age even if the Court

17  imposes the mandatory minimum.

18            And based on his utter lack of criminal

19  history, the contribution of drugs to what occurred,

20  the abandonment and emotional abuse of his family

21  and the situation that brought him to the point

22  where he lived with the victim and her family, I

23  don't understand why 15 years in prison isn't

24  enough.  I certainly disagree that life in prison is

25  appropriate for a 23-year-old man who has never been

1  in trouble in his life and this is his first

2  offense.

3          With all the mitigating factors, we

4  believe that the minimum sentence concurrent on each

5  count is appropriate, regardless of what the

6  guidelines say, regardless of what the statute says

7  and regardless of the argument made by the

8  Government.

9          We do not have any objections to the terms

10  of supervised release nor any request for the length

11  of supervised release.  He doesn't have any track

12  record on supervision, but he's been shown through

13  his activities in the jail and his desire to learn,

14  to finally get educated and get a job that he is

15  probably going to be okay when he gets out on

16  supervision, having never been in trouble before in

17  his life, so we have no objection to the length or

18  term and we do not request a release hearing.

19          I also want to note for the record

20  Mr. LaFoe has a paralyzing fear of public speaking

21  and enunciation and so he will not be making an

22  allocution statement.

23          THE COURT:  Okay.  All right.  Mr. LaFoe,

24  I heard what your attorney just said, but I have to

25  ask you for the record.  She just said allocution;

1  that's your right to make a statement to me before I

2  impose sentence.  She said you do not wish to do so.

3  Is that correct?

4          DEFENDANT LAFOE:  Yes, Your Honor.

5          THE COURT:  Okay.  All right.  Give me a

6  second.

7          (Pause.)

8          THE COURT:  All right.  I am taking the

9  sentencing guidelines into account on an advisory

10  basis.  I am also applying the factors as set forth

11  in -- under Section 3553(a) and I understand and

12  believe the sentence I am about to impose is

13  sufficient and not greater than necessary to comply

14  with both the sentencing guidelines and the

15  Section 3553(a) factors.

16          Let me be clear that I am -- in this case

17  especially -- I am using the guidelines, but

18  frankly, not very much.  This sentence is based on

19  the 3553(a) factors.

20          What's been presented before me both in

21  the presentence report, in the analysis done that

22  was filed as the Attachment to Document 25, the

23  mitigation report, even the recommendations of the

24  two sides, it shows the two different ways this case

25  can be examined.

1          On the one hand, Mrs. Pollock is talking

2   about imposing the minimum 15 years in each of

3   Counts 1 and 2 to be consecutive and I presume

4   Count 3 she would like to run concurrent, so that

5   would be 30 years.

6          Mrs. Peirson, on the other hand, says it

7   should be life, so effectively 30 years on each of

8   the three counts, the statutory maximum all to run

9   consecutively, so that would be 90 years in prison.

10          I am not trying to mathematically divide

11   this right in the middle because I don't think

12   that's right and my job isn't to do math.  I have to

13   balance the various factors involved in this

14   offense, and they are very troubling.

15          I have read the presentence report before

16   I read the mitigation report.  The presentence

17   report is horrific.  The word I would use to

18   describe the behavior involved is sick.  It greatly

19   troubled me.

20          When the victim's mother said it was a

21   betrayal, I think that's a good word to use, but it

22   also is going to bring a lifetime of hardship and

23   essentially mental and emotional torture upon the

24   victim.  She -- it sounds like from what Ms. Peirson

25   is telling me, she is going to recover somewhat, but

1   you never fully recover from something like this.

2   It's really bad.

3           So, when I look at the nature and

4   circumstances of the offense, if I didn't have any

5   evidence to the contrary, I would have no hesitation

6   in going 30, 30, 30, 90 and we are done.

7           Then, I get to the mitigation report, the

8   history and characteristics of the Defendant.

9   There's -- that's also just a really bad, sad story.

10  You can try to find some glimmers of hope in the

11  mitigation report, but in general, Mr. LaFoe, his

12  life was a train wreck; his family circumstances

13  were abusive, but he also -- I mean, I understand

14  his emotional age and how it's different than his

15  biological age, but some of the behavior he was

16  doing and the warnings he received that are in the

17  presentence report from other family members, he

18  should have stopped and he didn't, and at some

19  point, I have to weigh in -- I have to weigh that as

20  a factor.

21          So, I am taking into account the history

22  and characteristics, which cut both ways.  They

23  certainly, though, give me enough pause to think

24  that a sentence of 90 years -- effectively life --

25  would not be appropriate, so I am not going to do

1   that.

2           The sentence has to be serious enough that

3   it recognizes the seriousness of the offense, and I

4   cannot say that the minimum sentence would do so.

5   That wouldn't be right.  It wouldn't be right to the

6   victim or her family.  It wouldn't be right to

7   anybody else engaged in this type of behavior.

8           It has to -- the sentence has to promote

9   respect for the law.  Okay.  Let's -- realistically,

10  no matter what sentence I hand out, Mr. LaFoe is

11  unlikely to engage in another type of offense in the

12  sense of, you know, armed robbery or drug sales.  My

13  concern is more will he do some type of offense

14  involving children, minors.  I don't know.  Maybe as

15  he gets older, even though his emotional -- his

16  maturity level lags behind his biological age,

17  you know, as he gets older, it's going to move up

18  hopefully.

19          So, I have to provide just punishment for

20  the offense and I am going to try to do so and I

21  believe the sentence I am about to impose will do

22  so.

23          To afford adequate deterrence from

24  criminal conduct, I just mentioned that.  The public

25  has to be protected from further crimes of the

1  Defendant, and again I am referring to the balance

2  in here between what's in the mitigation report and

3  what's in the presentence report.  I don't know that

4  in the future whether or not we have to protect the

5  public from him -- Mr. LaFoe -- engaging in further

6  crimes with other children.  I have to take the

7  position -- I believe appropriately -- that I should

8  probably make sure the sentence does take that into

9  account, but this might only be because of the

10  relationship he had with the victim.

11         I did a very inartful job of saying what I

12  wanted to say.  I don't know if he would do the same

13  type of offense because, in his warped mind, his

14  relationship with the Defendant (sic) was what

15  caused this, at least as far as I can tell from the

16  evidence before me.

17         He's going to need some serious therapy,

18  some serious behavior modifications, so it needs to

19  be lengthy.  I am aware of all the sentences that

20  are available.  I am aware that the -- I need to

21  avoid unwanted sentencing disparities so, you know,

22  I could -- I could -- I could have taken what I will

23  call the lazy man's way out, the coward's way out or

24  whatever.  I could have just said, "Look, the

25  guidelines say this, this is what I am going to do."

1    I could have set a bunch of platitudes and

2    pronounced sentence and we would be done.

3            That's not what I am trying to do.  I am

4    trying to explain how I arrived at this because it

5    wasn't easy for me.  This is one of the tougher

6    sentencings I have had in a while because of the

7    dichotomy that was -- the dichotomy, the different

8    ways to view this case -- was really illustrated by

9    the recommendations.

10           Again, defense, 30 years.  Prosecution,

11   life.  So, I am trying to avoid unwanted sentencing

12   disparities as best I can, but again, my sentence is

13   being driven by the 3553 factors.

14           When I combine all those things together,

15   and I was double checking my math, I am looking

16   at -- just a second.  I am going to double check my

17   own math one more time to make sure I am doing this

18   correctly.

19           Oh, let me add one more thing.  In

20   addition to everything else I have mentioned, I also

21   am factoring in the fact that -- I don't recall

22   whether it was Mrs. Peirson or Mrs. Pollock that

23   said it, but I do -- am also including the fact that

24   the Defendant pled guilty and did not force what

25   would have been additional emotional trauma on the

1  victim.  You know, if I just maxed out everything,

2  you know, what's the incentive to plead guilty?  But

3  more importantly than that, far more importantly

4  than that, it would have put the victim through an

5  emotional ringer after she's already suffered so

6  much, so I am taking that into account also in

7  trying to fashion the appropriate sentence, so --

8          MS. PEIRSON:  Your Honor, I am sorry to

9  interrupt the Court.  I think the Court may have

10  misspoken when you said that Ms. Pollock's

11  recommendation was 30 years.  I think her

12  recommendation was 15.

13          And just as the Court is doing its

14  calculations, because there's no plea agreement in

15  this case, I just want to make sure the record is

16  clear.  I think you meant 15 --

17          THE COURT:  Did I say -- did I say 30?

18          MS. PEIRSON:  You said 30.

19          THE COURT:  I meant 15.

20          MS. PEIRSON:  I just want to make sure the

21  record --

22          THE COURT:  Sorry.

23          MS. PEIRSON:  That's okay.

24          THE COURT:  Thank you for correcting me.

25  I did -- you did say 15?

1          MS. POLLOCK:  That's correct, Your Honor.

2          THE COURT:  Yeah, I -- yeah, I have got so

3   many numbers flying in front of me, I just said 30

4   and I was thinking 15, so it's 15.

5          All right.  Well, let's get to the --

6   let's cut to the chase.  Pursuant to -- let me just

7   make sure I've got this correct.

8          All right.  Pursuant to the Sentencing

9   Reform Act of 1984, the Defendant, Nehemiah LaFoe,

10  is hereby committed to the custody of the Bureau of

11  Prisons for a period of 792 months.  Said sentence

12  shall consist of 22 years on each of Counts 1, 2 and

13  3 to be served consecutively.  The Defendant does

14  not have the ability to pay a fine; no fine is

15  imposed.

16         Upon release from custody, Mr. LaFoe shall

17  serve a lifetime term of supervised release.  Said

18  term shall consist of lifetime supervised release on

19  each of Counts 1, 2 and 3, to be served

20  concurrently.

21         Within 72 hours of release from custody

22  from the Bureau of Prisons, the Defendant shall

23  report in person to the probation officer in the

24  district to which he is released.

25         While on supervised release, he shall --

1  he shall not commit another federal, state or local

2  crime.  He shall not possess a controlled substance.

3  He shall submit to one drug test within 15 days of

4  leave from imprisonment, at least two drug tests

5  thereafter, as directed by the probation officer.

6        Pursuant to statute, he shall cooperate in

7  the collection of DNA, as directed by the probation

8  officer in the Bureau of Prisons.  He shall comply

9  with all the additional conditions of supervised

10 release that are set forth in the revised

11 presentence report.

12        The Court hereby at this time adopts all

13 of those paragraphs and conditions along with the

14 rationale as though I have read them all into the

15 record with the reasoning and rationale for them.

16 Both sides have waived me reading them into the

17 record directly, so at this time the Court indicates

18 those are hereby adopted as though I had spent the

19 time reading those into the record.

20        Furthermore, let me add that because of

21 the Defendant's conviction, because of the nature of

22 the conviction, he is required to register under the

23 Sex Offender Registration Notification Act.  The

24 Court orders that, as a condition of his supervised

25 release, he report the address where he resides and

1   any subsequent change of residence to the probation

2   officer responsible for his supervision, as well as

3   register in the jurisdiction in which he was

4   convicted if such jurisdiction is different from the

5   jurisdiction of his residence, any state where he

6   resides, any state where he is employed or he

7   carries on a vocation -- in other words, where he is

8   conducting his trade -- or is a student.

9   In other words, he has to fully comply with all of

10  the conditions of SORNA.

11          If I didn't say it before, I am not

12  imposing a fine.  There is a $300 special assessment

13  that is due and payable immediately.

14          It is recommended the Defendant serve his

15  sentence in a facility that will allow him to

16  participate in the Sex Offender Treatment Program.

17  It's also recommended he serve his sentence in a

18  facility that will allow him to get some additional

19  education and some vocational training because he

20  needs that badly.

21          $300 special assessment.  All proceeds

22  derived from the conduct under Counts 1, 2 and 3 are

23  hereby forfeited to the United States.  These items

24  are referenced in the Preliminary Order of

25  Forfeiture.

1           That's the Court's sentence in this

2   matter.  Mrs. Peirson, do you want any further

3   explanation of my reasons for imposing the sentence?

4           MS. PEIRSON:  No, Your Honor.

5           THE COURT:  Mrs. Pollock?

6           MS. POLLOCK:  I do, Your Honor.

7           THE COURT:  Yes?

8           MS. POLLOCK:  It wasn't more than I don't

9   know how many months ago that an individual named

10  Shawn Shannon, who was charged and convicted of over

11  20 counts of the same offense, came through this

12  courtroom; he never accepted responsibility; he went

13  to trial; he forced the testimony of the victims and

14  he received a lesser sentence than Mr. LaFoe --

15          THE COURT:  That's correct.

16          MS. POLLOCK:  -- and I do not understand

17  why Mr. LaFoe needs to serve 66 years in prison with

18  no criminal record.  For the first time, I do not

19  understand it.  I would like some clarification

20  about how Mr. LaFoe's case is different than

21  Mr. Shannon's and other people in this courtroom.

22          THE COURT:  When I was working on crafting

23  the sentence, I did, in fact, consider Mr. Shannon.

24  Actually, it was the case that I looked at.  I

25  looked at both Mr. Shannon's case as well as another

1   case involving a co-defendant of Mr. Gmoser's, which

2   is a different case, but who pled guilty.

3          I was struck in this case by the severity

4   of the damage done to the victim.  And I am not sure

5   if I indicated during the Shannon sentencing, but I

6   know there were comments made about overkill in the

7   Shannon case as though all these charges that were

8   piled on in that case were excessive and I think I

9   agreed with your argument to that extent, so I

10  lowered the sentence.

11         I don't think that's the case in this

12  case.  We are looking at only three counts versus,

13  well, six to seven times that many.

14         I like the fact that you are here because

15  I try to be consistent and that's exactly the case I

16  went to.  I went to look for that and -- you know,

17  it's escaped my mind -- give me a second -- Brian

18  Davis, Brian Davis, Mr. Gmoser's co-defendant who

19  pled guilty, who I gave a very, very high sentence

20  to also.  So, I had to kind of balance those out to

21  try and be consistent.

22         It wasn't easy.  I mean, I really

23  struggled with it, but looking at the factors,

24  that's how I ended up with this -- this sentence.

25  So, does that answer your question?

1          I mean, I am doing the best I can.  I am

2    trying to tell you what, I mean --

3          MS. POLLOCK:  No, I understand the Court's

4    explanation.

5          THE COURT:  I mean, being a Judge in this

6    kind of circumstance isn't easy because the

7    Prosecution has a wide variety of discretion in

8    deciding who to charge with -- I am not telling you

9    anything you don't know -- but in these cases, they

10   can pile up the counts and that will pile up the

11   mandatory minimums and pile up the -- or they can

12   choose to go lower.

13         I've tried to make sure that I am staying

14   within the law, but I am trying to balance the

15   actual harm being done versus the situation

16   involving the Defendant.  So, that's why I said when

17   I read the mitigation report, I walked away from 30,

18   30, 30.  I really started thinking, "I am going to

19   make this more like Mr. Shannon, but probably a

20   little harsher, and probably more like Mr. Davis."

21   It wasn't easy.

22         MS. POLLOCK:  He will be 80 years old when

23   he gets out.

24         THE COURT:  Anytime you want to try and

25   step in and do that juggling, come on over.

1          All right.  Okay.  From a technical point

2   of view, anything unclear?  Confusing?  Made any

3   mistakes that need to be corrected?

4          MS. PEIRSON:  No, Your Honor.  And just

5   for Ms. Pollock's memory -- I know she didn't do the

6   trial in the Shannon case -- but there was no way

7   that we could prove that there was any sexual

8   contact that occurred with Mr. Shannon, whereas here

9   Mr. LaFoe specifically traveled in interstate

10  commerce and committed sodomy with the victim on

11  multiple occasions.

12         So, I mean, we charged one count, but

13  there were multiple sexual contact that was involved

14  in this case.  That's the big difference between

15  this case and Mr. Shannon's case, just to put that

16  on the record, but I have nothing else that needs to

17  be clarified.

18         THE COURT:  From a technical point of

19  view, did I make any mistakes which I can correct at

20  this time?

21         MS. POLLOCK:  No, Your Honor.

22         THE COURT:  Did I answer all your

23  principal arguments then?  Well, to answer your

24  arguments, I've got to tell you, I mean, I relied

25  heavily on the mitigation report, but other than

1  that, did I answer all your principal arguments in

2  mitigation?

3         MS. POLLOCK:  Yes, Your Honor.

4         THE COURT:  Mr. LaFoe, you have the right

5  to appeal your conviction and your sentence.  You

6  can appeal your conviction if you believe your

7  guilty plea was somehow unlawful or involuntary or

8  if there was some other fundamental defect in the

9  proceedings that was not waived by your guilty plea.

10         You have a statutory right to appeal your

11  sentence particularly if you think the sentence is

12  contrary to law.  There are some timing issues

13  involved, however.  Any notice of appeal must be

14  filed within 14 days of the entry of judgment in

15  this case or within 14 days of the filing of the

16  notice to appeal by the Government or -- well, those

17  two options.

18         If you request, the Clerk of the Court

19  will prepare and file a notice of appeal on your

20  behalf.  You can also ask Mrs. Pollock to file a

21  notice of appeal, or you can file one yourself.

22         If you can't afford to pay the costs of an

23  appeal or for an attorney to represent you on

24  appeal, you have the right to apply to have the

25  Court waive the filing fee and ask for a

1  court-appointed attorney.  Do you understand those

2  rights I just explained to you?

3            DEFENDANT LAFOE:  Yes, I do, Your Honor.

4            THE COURT:  Do you have any questions?

5            DEFENDANT LAFOE:  No, Your Honor.

6            THE COURT:  Anything further on behalf of

7  the United States, Mrs. Peirson?

8            MS. PEIRSON:  No, Your Honor.

9            THE COURT:  Mrs. Pollock?

10           MS. POLLOCK:  No.  Thank you, Your Honor.

11           THE COURT:  All right.  The Defendant is

12 remanded to the custody of the United States Marshal

13 Service.  That will be all for the record.

14       (The proceedings concluded at 2:11 p.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATION

 2

 3          I, JILL NICOLE STEVENS, Certified

 4   Shorthand Reporter, do hereby certify that I

 5   reported in shorthand the proceedings had on the

 6   sentencing hearing in the above entitled cause; that

 7   I thereafter caused the foregoing to be transcribed

 8   by computer-aided transcription, which I hereby

 9   certify to be a true and accurate transcript of the

10   proceedings had before the Honorable Judge Colin S.

11   Bruce, Judge of said Court.

12

13          I do further certify that I am not related

14   in any way to any of the parties involved in this

15   action and have no interest in the outcome thereof.

16   Dated at Villa Grove, Illinois, May 22, 2018.

17

18

19

20          _____

                 Jill Nicole Stevens, Reporter
21

22

23

24

25
```